1

2

3                         UNITED STATES DISTRICT COURT

4                       NORTHERN DISTRICT OF CALIFORNIA

5

BARBARA RUCH,
6
                  Plaintiff,                    Case No.  14-cv-05352-MEJ
7
        v.                                      **ORDER GRANTING MOTION FOR**
8                                               **PRELIMINARY APPROVAL OF CLASS**
AM RETAIL GROUP, INC.                           **SETTLEMENT**
9   INDIVIDUALLY AND DBA, G.H. BASS
& CO.,                                          Re: Dkt. No. 23
10
                  Defendant.
11

12                              **INTRODUCTION**

13          Plaintiff Barbara Ruch ("Plaintiff") moves for preliminary approval of a class action

14   settlement.  Dkt. No. 23.  Defendant AM Retail Group Inc. ("AMRG") does not oppose the

15   motion.  Dkt. No. 27.  Through her Motion, Plaintiff seeks an order (1) preliminarily approving

16   the proposed settlement of this case on the terms set forth in the parties' proposed Stipulation of

17   Class Action Settlement ("Settlement Agreement") (Dkt. No. 24-1); (2) conditionally certifying a

18   settlement class; (3) approving their proposed Settlement Notice, attached as Exhibit A to the

19   Settlement Agreement; (4) appointing Plaintiff and her Counsel as Class Representative and Class

20   Counsel, respectively; and (5) scheduling a hearing for final approval of the Settlement.  Mot. at 1-

21   2.  Having carefully considered the Motion, the proposed Settlement Agreement, all supporting

22   documents, and the relevant legal authority, the Court **PRELIMINARILY APPROVES** the

23   Settlement Agreement for the reasons set forth below.

24                              **BACKGROUND**

25   **A.    Factual Background**

26          AMRG does business under numerous business names, including G.H. Bass & Co. ("G.H.

27   Bass").  Compl. ¶¶ 2, 9, Dkt. No. 1-4.  AMRG employed Plaintiff as a Store Sales Manager

28   ("SSM") in its G.H. Bass store in Petaluma, California from November 4, 2013 until July 17,

United States District Court
Northern District of California

United States District Court
Northern District of California

2014.  *Id.* ¶¶ 15, 27; Parks Decl. ¶ 10,[1] Dkt. No. 26.  Before November 4, 2013, she was employed by PVH Corp. (the prior owner of G.H. Bass stores in California) as the Petaluma store's SSM.[2] Compl. ¶ 14; Parks Decl. ¶ 10.  Plaintiff was classified as an "exempt" employee by PVH, and this classification remained in effect for G.H. Bass SSMs in California until November 14, 2014. Parks Decl. ¶ 10.  However, Plaintiff alleges her duties primarily consisted of non-exempt activities, including sales, customer service, cashiering, store presentation, store maintenance, opening and closing procedures, and weekly meetings.  Compl. ¶ 15.  Although she alleges she was frequently required to work 50-80 hours per week, her paycheck reflected that she worked only 40 hours per week.  *Id.* ¶ 17.  Plaintiff alleges AMRG mischaracterized the SSM position as exempt from overtime compensation.  *Id.* ¶ 19.

In addition to her overtime claims, Plaintiff alleges AMRG failed to provide meal and rest breaks; instead, they were informed their breaks were "working breaks."  *Id.* ¶ 22.  Plaintiff also alleges AMRG's employees were forced to incur expenses without reimbursement, such as using their personal cell phones and vehicles for business purposes, and being required to purchase and wear G.H. Bass clothing.  *Id.* ¶¶ 24-25.

Plaintiff filed this class action complaint against AMRG on October 10, 2014 in Sonoma County Superior Court.  Dkt. No. 1-4.  She alleges ten causes of action: (1) Failure to Reimburse for Reasonable Business Expenses, Cal. Lab. Code § 2802; (2) Failure to Pay Overtime Compensation, *id.* § 510; (3) Failure to Pay for All Hours Worked, Cal. Indus. Welfare Comm'n Wage Order 4-2001; (4) Failure to Provide Accurate Wage Statements, Cal. Lab. Code § 226(a); (5) Failure to Keep Accurate Payroll Records, *id.* § 1174(d); (6) Failure to Provide Rest Periods or Compensation in Lieu Thereof, *id.* § 226.7; (7) Waiting Time Penalties, *id.* §§ 201-02; (8) Unfair Business Practices, Cal. Bus. & Prof. Code § 17200; (9) Failure to Comply with Private Attorneys General Act, Cal. Lab. Code § 2698; and (10) Statutory and Common Law Retaliation and

---

[1] Certain facts set out in this Order appear only in Plaintiff's Motion and Parks' Declaration. However, in his Declaration, Park attests that the parties engaged in formal discovery efforts and confirmed certain facts.  Park Decl. ¶¶ 7, 9.  As Plaintiff's Motion is unopposed, the Court considers these facts undisputed.

[2] AMRG acquired G.H. Bass in November 4, 2013.  Compl. ¶ 15.

1   Termination, *id.* § 1102.5.  Compl. ¶¶ 40-108.

2         As part of the Court's Alternative Dispute Resolution program, the parties elected to

3   participate in private mediation.  Dkt. No. 9.  Prior to formal mediation, the mediator, Michael

4   Dickstein, and the parties engaged in extensive pre-mediation exchanges of information in

5   anticipation of the mediation.  Parks Decl. ¶ 16.  On October 5, 2015, the Parties participated in

6   formal mediation facilitated by Mr. Dickstein, which resulted in a written memorandum of

7   understanding that memorialized the core terms of the proposed settlement.  *Id.* ¶ 17; Mot. at 27.

8   The Parties also spent another several weeks negotiating the long form settlement agreement, with

9   back and forth on the details of the settlement and proposed notice.  *Id.* (both).

**B.     Settlement Terms**

11         Under the terms of the Settlement Agreement, AMRG has agreed to a guaranteed fund

12   settlement amount of $1,150,000.00, with no reversion of funds back to it.  Parks Decl. ¶ 18;

13   Settlement Agreement at 8.  In determining this amount, the parties exchanged both formal and

14   informal discovery, and the production of electronic spreadsheets detailing compensation, time

15   worked and hours allotted to the stores of the putative class enabled them to accurately estimate

16   the range of possible class-wide recoveries.  Parks Decl. ¶ 19; Mot. at 26.

17         1.    The Settlement Class

18         The Potential Class Members ("PCMs") in this case are "all Store Managers, Assistant

19   Store Managers, Managers in Training, and Sales Associates employed by and on the payroll of

20   AMRG in California at any time from October 10, 2010 through October 5, 2015."  Settlement

21   Agreement at 6.  There are over 3,000 PCMs.  Parks Decl. ¶ 27.  "Settlement Class" means those

22   PCMs who have not properly and timely opted-out of the settlement in connection with the opt-out

23   procedures described below.  Settlement Agreement at 7.

24         There are three proposed subclasses: (1) the "Unpaid Overtime Subclass" consisting of all

25   California Store SSMs of G.H. Bass & Co. from November 4, 2013 to November 14, 2014;[3] (2)

27   [3] On November 14, 2014, AMRG reclassified the G.H. Bass SSMs as non-exempt.  Parks Decl. ¶ 11.  Accordingly, Plaintiff's misclassification claim is directed to the population of G.H. Bass SSMs who worked as exempt employees before that reclassification.  All other AMRG SSMs were classified as non-exempt and paid overtime.  *Id.*

United States District Court
Northern District of California

the "Meal/Rest Break Premium Pay Subclass" comprising all California store employees of AMRG from October 12, 2010 to October 5, 2015; and (3) the "Reimbursement Subclass" consisting of all persons employed by and on the payroll of AMRG in California at any time from October 10, 2010 through October 5, 2015. *Id.* at 6-7. The parties also categorize employees who are primarily impacted by the unpaid reimbursement claims as "Keyholder Employees," defined as "all Store Managers, Assistant Store Managers, and Managers in Training employed by and on the payroll of AMRG in California at any time from October 10, 2010 through October 5, 2015." *Id.* at 7.

2.    Distribution of Settlement Payments

The parties agree that out of the $1,150,000.00 settlement amount, at least $742,500[4] will be distributed directly to PCMs by check (the "Net Settlement Fund"), with each PCM's estimated Settlement Payment[5] amount and the bases for the calculation stated in the Notice of Settlement. *Id.* at 11-12. In the event that PCMs do not claim their checks and thus remain unpaid, that residual amount will be redistributed to the Settlement Class, unless the total amount of unclaimed checks is equal to or less than $1,000.00, in which case the balance will be paid by the Settlement Administrator[6] to the Legal Aid Society-Employment Law Center as a cy pres beneficiary. *Id.* at 14.

Payment will be divided to the Settlement Subclasses as follows:

a.    *Unpaid Overtime Class*

Forty-five percent (45%) of the Net Settlement Fund will be allocated and distributed to members of the Unpaid Overtime Subclass. *Id.* at 11. This portion of the Net Settlement Fund will be distributed such that:

(1) Fifty percent (50%) of this portion shall be treated as wages and

---

[4] Distribution of the remaining $407,500 is described below.
[5] "Settlement Payment" means the amount to be paid to individual PCMs pursuant to the calculations set forth below.

[6] "Settlement Administrator" means the firm of ILYM Group, Inc., which is the entity the parties selected to provide notice of this proposed class action settlement to the proposed classes and to perform other related functions to administer the settlement set forth in the Settlement Agreement.

4

United States District Court
Northern District of California

divided among each Settlement Class Member who will receive a percentage of the amount distributed based on: (a) the number of work weeks that each member of the Overtime Subclass was employed by AMRG between November 4, 2013 through November 14, 2014 as the numerator, and (b) the total number of work weeks that all members of the Unpaid Overtime Subclass were employed by AMRG between November 4, 2013 through November 14, 2014 as the denominator, and

(2) Fifty percent (50%) shall be treated as penalties and interest and paid pursuant to a Form 1099 to be divided as follows: i) one-half (1/2) to be divided and allocated equally among each member of the Unpaid Overtime Subclass and one-half (112) to be divided and allocated equally among those members of the Unpaid Overtime Subclass who were terminated or separated from AM Retail Group on or before October 5, 2015.  Any residual amount allocated to the Unpaid Overtime Subclass that remains unclaimed will be reallocated and divided equally to other members of the Unpaid Overtime Subclass pursuant to Form 1099.

*Id.*

> b.      *Meal/Rest Break Premium Pay Subclass*

Forty-five percent (45%) of the Net Settlement Fund will also be allocated to members of the Meal/Rest Break Premium Pay Subclass.  *Id.*  This portion of the Net Settlement Fund will be distributed such that:

(1) Fifty percent (50%) of this portion shall be treated as wages for payroll tax purposes and divided among each member who will receive a percentage of the amount based on the following calculation (a) the number of work weeks that each member of the Subclass was employed by AM Retail Group between October 10, 2010 through October 5, 2015 as the numerator, and (b) the total number of work weeks that all members of the Subclass were employed by AM Retail Group between October 10, 2010 through October 5, 2015 as the denominator, and

(2) Fifty percent (50%) shall be treated as penalties and interest and paid pursuant to a Form 1099 to be divided as follows: i) one-half (1/2) to be divided and allocated equally among each member of the Unpaid Overtime Subclass and one-half (112) to be divided and allocated equally among those members of the Meal/Rest Break Premium Pay Subclass who were terminated or separated from AM Retail Group on or before October 5, 2015.  Any residual amount allocated to the Meal/Rest Break Premium Pay Subclass that remains unclaimed will be reallocated and divided equally to other members of the Meal/Rest Break Premium Pay Subclass pursuant to Form 1099.

*Id.* at 11-12.

United States District Court
Northern District of California

*c.       Reimbursement Subclass*

Ten percent (10%) of the Net Settlement Fund will be distributed to members of the Reimbursement Subclass and paid pursuant to a Form 1099, with seventy-five (75%) divided equally amount Keyholder Employees and twenty-five (25%) divided equally among non-Keyholder Employees. *Id.* at 12.

3.       <u>Allocation and Taxability of Settlement Distributions</u>

The Settlement Administrator will provide to AMRG records of what was paid to each Settlement Class member. *Id.* The Settlement Administrator shall provide each Settlement Class member a W-2 form reflecting the portion of each Settlement Payment attributable to wages and the taxes withheld from those wages. *Id.* at 13. The Settlement Administrator shall also provide each Settlement Class Member a 1099 Form reflecting the portion of each Settlement Payment attributable to penalties. *Id.* The Settlement Administrator shall provide each Settlement Class Member with appropriate documentation setting forth the amount of any tax or other payment withheld, and employer contribution made, in accordance with state and federal tax requirements. *Id.* Settlement Class Members shall be responsible for remitting to state and/or federal taxing authorities any applicable other taxes due. *Id.*

4.       <u>Other Payments</u>

*a.       Service Award*

The Settlement Agreement calls for $5,000 to be paid as a Service Award to Plaintiff for her time and efforts in bringing and prosecuting this matter. *Id.* at 9. Any service award will be reported as "other income" on a 1099 Form. *Id.* at 12. In exchange for this Service Award, Plaintiff agrees not to publicize the settlement beyond what is expressly approved by the Court, agrees to respond to any inquiry regarding the settlement only by referring the inquiry to Class Counsel, and saying nothing further other than "the matter was resolved." *Id.* at 10. The Settlement Agreement is not contingent upon the Court granting Plaintiff's request for a Service Award. *Id.*

*b.       Attorneys' Fees and Costs*

The Settlement Agreement also permits an award of attorneys' fees and costs to Class

6

Counsel, Alan I. Schimmel and Michael W. Parks of the law firm of Schimmel & Parks, APLC. *Id.* at 5, 9. Class Counsel may seek up to 30% of the $1,150,000 Settlement Fund ($345,000) and payment of up to $20,000 for out-of-pocket litigation costs. *Id.* at 9. Class Counsel will file their application for attorneys' fees and costs prior to the final approval hearing, and the Settlement Agreement is not contingent upon the Court granting counsel's request. *Id.*

>        *c.*    *Administrative Costs*

The parties estimate Administrative Costs, defined as "the estimated reasonable cost for providing Class Notice, various efforts to locate class members, and administrating payment of claims on behalf of the Settlement Class," at $30,000. *Id.* at 4, 10. These funds shall be deducted from the overall settlement amount and any residual amount will be included as part of the distribution to the Settlement Class. *Id.* at 10.

>        *d.*    *LWDA Payment*

Under the Agreement, $10,000 will be allocated to penalties that will be paid to the California Labor and Workforce Development Agency ("LWDA") in satisfaction of claims for penalties owed to the agency under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), with 25% of the amount to be allocated to the Net Settlement Fund. *Id.*; *see also* Cal. Lab. Code § 2699(i).

> 5.   <u>Notification of Settlement</u>

The parties agree to jointly review and approve a class list identifying all PCMs and specifying the number of weeks worked by each such person during the relevant period for each Subclass. Settlement Agreement at 16. Notice shall be provided to PCMs as follows:

> Within seven (7) days of entry of the Order Granting Preliminary Approval, Defendant shall provide the Settlement Administrator with each Potential Class Member's name, last-known mailing address, and the above information to determine Potential Class Members' individual Settlement Payment. Defendant shall provide this information in the form of an Excel spreadsheet or similar sortable electronic format. Within seven (7) days after the end of the Notice Period, the Settlement Administrator shall provide Class Counsel and counsel for Defendant with a list of the names of the Settlement Class Members, with such names to be kept confidential and used by Class Counsel only for the purposes of this settlement and for no other purpose.

7

The Notice of Class Action Settlement and Hearing Date for Court Approval ("Class Notice") . . . as approved by the Court, shall be sent by the Settlement Administrator to the Potential Class Members, by First Class U.S. Mail to those addresses provided, as soon as practicable but in any event within fourteen (14) days after receipt of class member information from Defendant.

The Class Notice shall set forth a brief description of the Action, provide the definition of the Settlement Class, inform Potential Class Members of the nature and scope of the settlement of claims, disclose key terms of the settlement including each Potential Class Member's potential individual award, the basis for the calculation of the award, attorneys' fees, and Service Award, inform Potential Class Members of their opportunity to be heard at the Final Settlement Hearing, inform Potential Class Members of their right to submit an objection to any term of the Settlement Agreement, to opt-out of the settlement, and the procedures for doing so, and explain the res judicata effect of not opting out. The Class Notice will set forth contact numbers for Class Counsel, Defendant's Counsel, and the Settlement Administrator.

The Settlement Administrator will attempt to locate any Potential Class Members whose Class Notice is returned by the Post Office. Defendant will inform the Settlement Administrator of the social security number of each Potential Class Member whose Class Notice is returned. The Settlement Administrator will initially perform a National Change of Address (NCOA) search on the entire Potential Class Member list and will conduct address verification of returned mail or engage in other methodology as may be appropriate to ensure that reasonable efforts are made to send the Class Notice to all Potential Class Members. For those Potential Class Members for whom a mailing address is not available, or for whom the mailed Class Notice comes back undeliverable, the Settlement Administrator may utilize other methods to the extent appropriate in an effort to obtain proper mailing addresses for such individuals.

If an envelope has not been returned within thirty (30) days of the mailing, it shall be conclusively presumed that the Potential Class Member received the notice.

At least twenty-one (21) days before the Final Settlement Hearing, the Settlement Administrator shall prepare a declaration of due diligence and proof of mailing with regard to the mailing of the Class Notice, and any attempts by the Settlement Administrator to locate Potential Class Members ("Due Diligence Declaration"). The Settlement Administrator shall prepare a separate declaration identifying the name of each Potential Class Member who submitted a timely and valid opt-out ("Opt-Out Declaration"). Class Counsel shall be responsible for filing the Due Diligence Declaration and Opt-Out Declaration with the Court.

Unless a Potential Class Member submits and signs a timely, valid request to be excluded, that Potential Class Member shall be a member of the Settlement Class and shall be bound by all of the terms of the Settlement Agreement and the Court's Order of Final Approval and Judgment.

1    *Id.* at 17-18.

2         6.     Opt-Out Procedure and Objections

3         Except for the named Plaintiff, PCMs shall be entitled to opt-out of the Settlement Class

4    by signing and mailing an opt-out request to the Settlement Administrator within the Notice

5    Period[7] a request clearly stating their intention to be excluded from the Settlement Class.  *Id.* at 16.

6    The Settlement Administrator will notify Class Counsel and counsel for Defendant of any opt-outs

7    received.  *Id.*

8         The Class Notice shall provide that members of the Settlement Class who wish to object to

9    the Settlement Agreement must file with the Court a written statement objecting to the Settlement

10   Agreement, postmarked no later than the last day of the Notice Period. [8]  *Id.*  No PCM shall be

11   entitled to be heard at the final approval hearing or to object to the Settlement Agreement unless

12   the individual's written statement of objections and supporting materials have been timely filed.

13   PCMs who fail to file and serve timely written objections shall be deemed to have waived any

14   objections.  *Id.*

15        7.     Final Approval and Judgment Order

16        Rule 23(e)(2) contemplates that the Court will conduct a final approval hearing.  *Id.* at 18.

17   After the final approval hearing, and upon the Court's finding that the settlement is fair,

18   reasonable, and adequate, the parties will move the Court to enter an Order granting final approval

19   of the Settlement, which will

20              (a) approve the Settlement Agreement, adjudging the terms thereof
                to be fair, reasonable and adequate, and directing consummation of
21              its terms and provisions; (b) approve an award of Attorneys' Fees
                and Costs to Class Counsel; (c) approve a Service Award to Named
22              Plaintiff; (d) approve settlement Administrative Costs; (e) enter
                judgment against Settlement Class Members such that they will take
23              nothing by their Complaint in this Action other than what is
                provided for in the Settlement Agreement; and (f) permanently bar
24              and enjoin all the Settlement Class Members from prosecuting any

25   _____

26   [7] "Notice Period refers to the time period of 60 days from the mailing date postmarked on the
     Notice of Settlement mailed by the Settlement Administrator, within which Potential Class
27   Members may opt-out of the Settlement."  *Id.* at 6.
     [8] The current Class Notice also requires members to serve this objection on counsel for the parties.
28   However, the Court finds filing provides adequate notice to the parties.  Therefore, as addresses
     below, the parties shall remove this provision.

United States District Court
Northern District of California

1    Released Claims against any Released Parties.

2    *Id.* at 18-19.

3        8.    <u>Releases</u>

4        The Settlement Agreement provides that judgment will be entered upon final approval of

5    the Settlement, and the final approval order and judgment entered by the Court will constitute a

6        binding and final resolution, release, and discharge the Released
     Parties from any and all claims each Settlement Class Member,
7        including Named Plaintiff, jointly and severally, has or could have
     against the Released Parties based on the facts alleged in the
8        Complaint, including all claims,  judgments, liens, losses, debts,
     liabilities, demands, obligations, guarantees, penalties, costs,
9        expenses, attorneys' fees, damages, indemnities, actions, causes of
     action, and obligations of every kind in law, equity or otherwise,
10       known or unknown, suspected or unsuspected, disclosed or
     undisclosed, contingent or accrued, alleged in the Complaint, or
11       based on the allegations made therein ("Released Claims").  The
     Released Claims include claims under the California Labor Code
12       sections cited in Plaintiff's pleadings, such as sections 201, 202,
     203, 204, 226, 226.7, 227.3, 510, 510, 558, 1174, 1174.5, 1194,
13       1197, 2802, and 2699, and Wage Order Nos. 4 and 15.   The
     Released Claims include any right of Settlement Class Members to
14       penalties for failure to pay wages, wage statement penalties, and
     PAGA penalties based on the California Labor Code sections cited
15       in Plaintiff's pleadings.  This Settlement Agreement shall constitute,
     and may be pleaded as, a complete and total defense to any Released
16       Claims asserted by any Settlement Class Member in the future.

17   *Id.* at 15.  If a Settlement Class Member brings a separate action seeking penalties arising from

18   facts or claims other than those released as part of the Settlement Agreement, but that relate to the

19   Settlement Period of October 10, 2010 through October 5, 2015, and prevails in that action,

20   penalties awarded in the separate action shall be reduced by "the settlement amounts attributable

21   to the same category of penalties released" under the terms of the Settlement Agreement.  *Id.*

22       9.    <u>Payment</u>

23       The Settlement Administrator shall verify that payment is made to the class members and

24   Plaintiff, and this verification and proof of payment shall be filed with the Court and provided to

25   the parties.  *Id.* at 13.  Any checks issued by the Settlement Administrator shall remain valid and

26   negotiable for sixty (60) days from the date of their issuance and may thereafter automatically be

27   cancelled if not cashed within that time.  *Id.*  At the conclusion of the 60-day check cashing

28   period, the Settlement Administrator shall inform the parties regarding the status of any uncashed

10

1    checks, including the amount and identity of the settlement class member.  *Id.*  The parties will

2    follow the cy pres provision as to unclaimed amounts.  *Id.* at 13-14.

3                                    **LEGAL STANDARD**

4            The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class

5    actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nonetheless, a

6    class action may not be settled without court approval. Fed. R. Civ. P. 23(e).  When the parties to

7    a putative class action reach a settlement agreement prior to class certification, "courts must

8    peruse the proposed compromise to ratify both the propriety of the certification and the fairness of

9    the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

10           Courts generally employ a two-step process in evaluating a class action settlement.  First,

11   the court must assess whether a class exists.  *Id.* (citing *Amchem Prods. Inc. v. Windsor*, 521 U.S.

12   591, 620 (1997)).  This level of attention "is of vital importance, for a court asked to certify a

13   settlement class will lack the opportunity, present when a case is litigated, to adjust the class,

14   informed by the proceedings as they unfold." *Id.*

15           Second, the court must determine whether the proposed settlement "whether a proposed

16   settlement is fundamentally fair, adequate, and reasonable," recognizing that "[i]t is the settlement

17   taken as a whole, rather than the individual component parts, that must be examined for overall

18   fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Where the parties

19   reach a settlement prior to class certification, courts apply "a higher standard of fairness and a

20   more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*,

21   697 F.3d 858, 864 (9th Cir. 2012) (internal quotations and citation omitted).  The Court's task at

22   the preliminary approval stage is to determine whether the settlement falls "within the range of

23   possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)

24   (internal quotations and citation omitted).  "The initial decision to approve or reject a settlement

25   proposal is committed to the sound discretion of the trial judge." *Class Plaintiffs*, 955 F.2d at

26   1276.

27           Preliminary approval of a settlement is appropriate if "the proposed settlement appears to

28   be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does

United States District Court
Northern District of California

1    not improperly grant preferential treatment to class representatives or segments of the class, and

2    falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (internal

3    quotations and citation omitted).  The proposed settlement need not be ideal, but it must be fair

4    and free of collusion, consistent with a plaintiff's fiduciary obligations to the class.  *Hanlon*, 150

5    F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether

6    the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free

7    from collusion.").  To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and
> likely duration of further litigation; the risk of maintaining class
> action status throughout the trial; the amount offered in settlement;
> the extent of discovery completed and the state of the proceedings;
> the experience and views of counsel; the presence of a governmental
> participant; and the reaction of the class members to the proposed
> settlement.

12   *Id.* at 1026 (citations omitted).  The proposed settlement must be "taken as a whole, rather than the

13   individual component parts" in the examination for overall fairness.  *Id.*  Courts do not have the

14   ability to "delete, modify, or substitute certain provisions" because the settlement "must stand or

15   fall in its entirety."  *Id.*

16        If the court preliminarily certifies the class and finds the proposed settlement fair to its

17   members, the court schedules a final approval hearing pursuant to Federal Rule of Civil Procedure

18   23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and

19   adequate."  Fed. R. Civ. P. 23(e)(2); *see also In re Google Referrer Header Privacy Litig.*, 2014

20   WL 1266091, at *2 (N.D. Cal. Mar. 26, 2014).

21                                        **DISCUSSION**

22   **A.      Class Certification**

23        The Court has discretion to certify a class action under Rule 23.  *Meyer v. Portfolio*

24   *Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).  To obtain class certification, the

25   plaintiff must satisfy the four prerequisites identified in Rule 23(a) as well as one of the three

26   subdivisions of Rule 23(b).  *Amchem Prods.*, 521 U.S. at 614.  The four prerequisites are: (1)

27   numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  *See* Fed. R. Civ.

28   P. 23(a)(1)-(4).  If these requirements are satisfied, the Court then examines whether the plaintiff

United States District Court
Northern District of California

satisfies one of the requirements of Rule 23(b).  Plaintiff seeks certification under Rule 23(b)(3), which is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods.  Fed. R. Civ. P. 23(b)(3).

       1.    <u>Rule 23(a)</u>

            *a.*    *Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable."  Fed. R. Civ. P. 23(a)(1).  No specific number is required, although there is a presumption that a class with more than 40 members is impracticable to require joinder.  *Ries v. Ariz. Bevs. U.S. LLC, Hornell Brewing Co.*, 287 F.R.D. 523, 536 (N.D. Cal. 2012); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 616 (N.D. Cal. 2014) ("Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." (citation omitted)).

The numerosity requirement is satisfied here as there are over 3,000 PCMs.  Parks Decl. ¶ 27.

            *b.*    *Commonality*

Rule 23(a)(2) requires some "questions of fact and law which are common to the class." To satisfy this requirement, the claims must "depend upon a common contention" such "that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  But this does not necessitate that "every question in the case, or even a preponderance of questions, is capable of class wide resolution."  *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013).  "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  *Id.* (citing *Wal-Mart Stores*, 131 S. Ct. at 2556). "[C]ommonality cannot be determined without a precise understanding of the nature of the underlying claims."  *Parsons v. Ryan*, 754 F.3d 657, 676 (9th Cir. 2014) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184, 1194-95 (2013); additional citation omitted).

This case is based on common questions of both law and fact, as Plaintiff's claims are based on common policies that applied to each AMRG employee.  With respect to the Overtime

1   Wage Subclass, AMRG uniformly classified Plaintiff and all G.H. Bass SSMs as "exempt" from

2   November 4, 2013 to November 14, 2014.  Parks Decl. ¶ 11.  With regard to the Meal/Rest Break

3   and Reimbursement Subclasses, all AMRG employees were subject to its meal and rest break

4   policy, expense reimbursement policy, and dress policy.  *Id.* ¶ 28.  Thus, Rule 23(a)(2) is satisfied.

5                          *c.      Typicality*

6              Rule 23(a)(3) requires that the representative party's claim be "typical of the claim . . . of

7   the class."  Fed. R. Civ. P. 23(a)(3).  "'Under this rule's permissive standards, representative

8   claims are typical if they are reasonably co-extensive with those absent class members; they need

9   not be substantially identical.'"  *Parsons*, 754 F.3d at 685 (quoting *Hanlon*, 150 F.3d at 1020).

10  "The test of typicality is 'whether other members have the same or similar injury, whether the

11  action is based on conduct which is not unique to the named plaintiffs, and whether other class

12  members have been injured by the same course of conduct.'"  *Id.* (quoting *Hanon v. Dataproducts*

13  *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

14             Typicality is met here: Plaintiff's individual claims are the same as the claims brought on

15  behalf of all PCMs.  Plaintiff alleges she was denied proper overtime wages like the other G.H.

16  Bass SSMs, that she was denied off-duty meal and rest breaks like other AMRG employees, and

17  that she did not receive proper reimbursement like other AMRG employees.  Her claims are

18  typical because she was subject to the same conduct as other PCMs, suffered the same damages,

19  and she does not seek any unique or personalized claims.  Accordingly, the Court finds Plaintiff

20  satisfies Rule 23(a)(3)'s typicality requirement.

21                          *d.      Adequacy of Representation*

22             Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

23  interests of the class."  Fed. R. Civ. P. 23(a)(4).  Due process concerns are central to this

24  determination: "[A]bsent class members must be afforded adequate representation before entry of

25  judgment which binds them."  *Hanlon*, 150 F.3d at 1020 (citation omitted).  Two questions must

26  be considered in this determination: "(1) do the named plaintiffs and their counsel have any

27  conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel

28  prosecute the action vigorously on behalf of the class?"  *Id.*  The Court finds Plaintiff meets these

United States District Court
Northern District of California

14

1   requirements.

2          First, there is no evidence Plaintiff or her counsel have any conflicts of interest with other

3   PCMs.  Plaintiff brought this case against AMRG as a class action, and she "surrenders any right

4   to compromise the claims of the group without the Court's approval or to put her claims ahead of

5   the claims of the group."  Mot. at 20; Parks Decl. ¶ 31.  Second, based on the available

6   information, the Court is satisfied Plaintiff and her counsel have and will continue to vigorously

7   prosecute this action on behalf of the class.  Plaintiff shares the same interests as the absent class

8   members, namely, bringing claims for injury caused by the same company-wide policies and

9   practices and seeking the same penalties.  Third, Plaintiff is represented by experienced class

10  action attorneys who have qualified as lead class counsel in class actions pending in courts

11  throughout California and across the country.  Parks Decl. ¶ 34 (listing cases).  Accordingly, the

12  Court finds both Plaintiff and her counsel are adequate representatives.

13                 *e.     Summary*

14         In light of the foregoing, the Court finds Plaintiff has satisfied Rule 23(a)'s four

15  prerequisites to maintaining a class action.  Accordingly, the Court turns to Rule 23(b) concerning

16  the type of class action that may be maintained.

17         2.      Rule 23(b)(3)

18         Plaintiff seeks to certify this proposed class under Rule 23(b)(3), which requires the Court

19  to find that: (1) "the questions of law or fact common to class members predominate over any

20  questions affecting only individual members," and (2) "a class action is superior to other available

21  methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These

22  provisions are referred to as the "predominance" and "superiority" requirements.  *See Hanlon*, 150

23  F.3d at 1022-23.  The matters pertinent to these findings include: "(A) the class members' interests

24  in individually controlling the prosecution or defense of separate actions; (B) the extent and nature

25  of any litigation concerning the controversy already begun by or against class members; (C) the

26  desirability or undesirability of concentrating the litigation of the claims in the particular forum;

27  and (D) the likely difficulties in managing a class action."  *Id.*

28         The Court finds this case meets Rule 23(b)(3)'s requirements as the common questions

United States District Court
Northern District of California

raised predominate over any individualized questions concerning the proposed Settlement Class. As discussed above, Plaintiff's claims are typical of the class and are based on AMRG's common policies.  Plaintiff asserts AMRG committed these violations in the same manner as to all PCMs.  Thus, the class has suffered a common injury.  As to superiority, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.  Thus, any manageability problems that may have existed are eliminated by the settlement.  As such, the Court finds that Rule 23(b)(3)'s requirements are satisfied for purposed of this Motion.

### 3.   Class Certification Summary

In view of the analysis above, the Court finds Plaintiff has satisfied the requirements of Rule 23(a) and (b)(3).  Accordingly, for purposes of this Motion, the Court certifies the proposed Settlement Class and appoints Plaintiff's counsel as Class Counsel to effectuate the Settlement Agreement.

### B.   Preliminary Fairness Determination

The Court now preliminarily examines the Settlement Agreement to ensure it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  As noted, when settlement occurs before formal class certification, settlement approval requires a higher standard of fairness in order to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the class.  *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).  Nonetheless, "class action settlements do not need to embody the best result for preliminary approval." *In re Google*, 2014 WL 1266091, at *6.  The preliminary approval stage is characterized "as an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citation omitted).  "At this point, the court's role is to determine whether the settlement terms fall within a reasonable range of possible settlements, with 'proper deference to the private consensual decision of the parties' to reach an agreement rather than to continue litigating." *Id.* (quoting *Hanlon*, 150 F.3d at 1027).

1    "The Court may grant preliminary approval of a settlement and direct notice to the class if

2    the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2)

3    has no obvious deficiencies; (3) does not improperly grant preferential treatment to class

4    representatives or segments of the class; and (4) falls within the range of possible approval."

5    *Angell v. City of Oakland*, 2015 WL 65501, at *7 (N.D. Cal. Jan. 5, 2015) (quoting *Harris v.*

6    *Vector Mktg. Corp.*, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011) and *In re Tableware*, 484

7    F. Supp. 2d at 1079)). "Closer scrutiny is reserved for the final approval hearing." *Harris*, 2011

8    WL 1627973, at *7.

9        1.    <u>Settlement Negotiations</u>

10       Based on the parties' written submissions, the settlement in this case appears to be the

11   product of serious, informed, non-collusive negotiations. Prior to formal mediation, the mediator,

12   Michael Dickstein, and the parties engaged in extensive pre-mediation exchanges of information

13   in anticipation of the mediation. Parks Decl. ¶ 16. On October 5, 2015, the Parties participated in

14   formal mediation facilitated by Mr. Dickstein, which resulted in a written memorandum of

15   understanding that memorialized the core terms of the proposed settlement. *Id.* ¶ 17; Mot. at 27.

16   The Parties also spent another several weeks negotiating the long form settlement agreement, with

17   back and forth on the details of the settlement and proposed notice. *Id.* (both). "[S]ettlements are

18   entitled to 'an initial presumption of fairness' because they are the result of arm's-length

19   negotiations among experienced counsel." *In re High-Tech Emp. Antitrust Litig.*, 2013 WL

20   6328811, at *1 (quoting Newberg on Class Actions § 11:41 (4th ed.)). Accordingly, the process

21   by which the parties reached their settlement weighs in favor of preliminary approval.

22       2.    <u>The Presence of Obvious Deficiencies</u>

23       The Court must next analyze whether there are obvious deficiencies in the Settlement

24   Agreement. The Court finds none at this time. First, the proposed Settlement results in a

25   substantial monetary benefit to all PCMs. The Settlement Class will share in proceeds of no less

26   than $742,500 after deduction for attorneys' fees and costs, the class representative service award,

27   payments to the LWDA pursuant to PAGA, and settlement administration costs. Further, the

28   parties have exchanged a significant amount of both formal and informal discovery, and the

United States District Court
Northern District of California

1    production of electronic spreadsheets detailing compensation, time worked and hours allotted to

2    the stores of the putative class have enabled Plaintiff to accurately estimate the range of possible

3    class-wide recoveries.  Parks Decl. ¶ 19; Mot. at 26.  The amount of discovery and investigation

4    completed prior to reaching a settlement is an important consideration because it demonstrates

5    whether the parties and the Court have sufficient information before them to assess the merits of

6    the claims.  *See Lewis v. Starbucks Corp.*, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008)

7    ("approval of a class action settlement is proper as long as discovery allowed the parties to form a

8    clear view of the strengths and weaknesses of their cases").

9          Second, as discussed above, the Settlement Agreement's release language appropriately

10   releases only claims based on the same factual predicate as the underlying claims in this case.  The

11   release only covers claims that are asserted or could have been asserted based on the allegations in

12   the operative Complaint.  Such a narrow release warrants preliminary approval.  *See, e.g.*, *Hesse v.*

13   *Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party

14   from bringing a related claim in the future even though the claim was not presented and might not

15   have been presentable in the class action, but only where the released claim is based on the

16   identical factual predicate as that underlying the claims in the settled class action." (internal

17   quotation marks and citations omitted)); *Angell*, 2015 WL 65501, at *7 ("While the scope of the

18   release in the revised settlement agreement is still broad, it is acceptable because the claims

19   released are limited to those 'against the Defendants, their agents, and their employees arising

20   from the events alleged in Plaintiffs' Complaint.'").

21         Third, any checks that are not cashed within the time provided in the Notice, and any

22   Settlement Payments that otherwise cannot be distributed, shall be paid to the Legal Aid Society –

23   Employment Law Center as a cy pres recipient.  *See Angell*, 2015 WL 65501, at *7 (the settlement

24   agreement should "provide for a cy pres recipient or specify what would happen with the funds if

25   a check is undeliverable or remains uncashed.")  As the Ninth Circuit has held, there must be "a

26   driving nexus between the plaintiff class and the cy pres beneficiaries."  *Dennis*, 697 F.3d at 865

27   (internal quotations and citation omitted).  Thus, a "cy pres award must be guided by (1) the

28   objectives of the underlying statute(s) and (2) the interests of the silent class members, and must

United States District Court
Northern District of California

18

1    not benefit a group too remote from the plaintiff class." *Id.* (internal quotations and citation

2    omitted).  As this case involves wage and hour employment claims, the designated cy pres

3    recipient is adequate to meet the requirements for preliminary approval.

4           Finally, although the Court is not approving the amount requested for attorneys' fees and

5    costs at this stage, the Settlement Agreement provides that any such award to Class Counsel will

6    not exceed 30% of the Settlement Fund and payment of up to $20,000 for out-of-pocket litigation

7    costs.  Settlement Agreement at 9.  "In a certified class action, the court may award reasonable

8    attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed.

9    R. Civ. P. 23(h).  Thus, in awarding attorneys' fees under Rule 23(h), "courts have an independent

10   obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have

11   already agreed to an amount."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th

12   Cir. 2011) (citations omitted).   Here, given that Class Counsel's fee award will total no more than

13   30% of the Settlement Amount, the Court finds Class Counsel's proposed fees are reasonable at

14   this stage and do not suggest against granting preliminary approval.  *See id.* ("[C]ourts typically

15   calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate

16   explanation in the record of any 'special circumstances' justifying a departure.");  *Wren v. RGIS*

17   *Inventory Specialists*, 2011 WL 1230826, at *29 (N.D. Cal. Apr. 1, 2011) (approving fee of 42%

18   of common fund in wage and hour class action);  *In re Activision Sec. Litig.*, 723 F. Supp. 1373,

19   1377 (N.D. Cal. 1989) (noting common fund awards range around 30%).

20          Accordingly, the lack of obvious deficiencies in the Settlement Agreement weighs in favor

21   of granting preliminary approval.

22          3.     Preferential Treatment

23          The third factor the Court considers is whether the Settlement Agreement provides

24   preferential treatment to any class member.  Having reviewed the agreement, the Court finds there

25   is no preferential treatment to any class member.  As noted above, the settlement funds will be

26   distributed based on the number of work weeks that each member of the Settlement Class was

27   employed by AMRG, and the payment amount and the bases for the calculation will be stated in

28   the Notice of Settlement.  Settlement Agreement at 11-12.  While the Settlement Agreement

United States District Court
Northern District of California

19

1   authorizes an incentive award to Plaintiff of up to $5,000, "the Ninth Circuit has recognized that

2   service awards to named plaintiffs in a class action are permissible and do not render a settlement

3   unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9 (citing *Staton*, 327 F.3d at 977).

4   Additionally, while the Court is not approving the amount of the incentive award at this stage, the

5   Court notes the proposed award is not outside the range of reasonableness. *See, e.g.*, *Angell*, 2015

6   WL 65501, at *8 (granting preliminary approval of settlement agreement authorizing $9,000

7   incentive award for each of eight class representatives); *Covillo v. Specialtys Cafe*, 2014 WL

8   954516, at *8 (N.D. Cal. Mar. 6, 2014) (approving $8,000 incentive award); *Barel v. Bank of Am.*,

9   255 F.R.D. 393, 402 (E.D. Pa. 2009) (approving $10,000 incentive award).

10          Accordingly, the Court finds this factor weighs in favor of preliminary approval.

11          4.      Reasonable Range of Possible Approval

12          Finally, the Court must determine whether the proposed settlement falls within the range of

13  possible approval. To determine whether an agreement is fundamentally fair, adequate, and

14  reasonable, the Court may preview the factors that ultimately inform final approval: (1) the

15  strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

16  litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered

17  in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the

18  experience and views of counsel; (7) the presence of a governmental participant; and (8) the

19  reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

20          Considering all the circumstances, the Court finds these factors all weigh in favor of

21  preliminary approval of the proposed Settlement Agreement. The Net Settlement Fund of

22  $742,500 represents a fair compromise given the litigation risks and uncertainties presented by

23  continued litigation. While Class Counsel believes that the Class's claims are meritorious, AMRG

24  vigorously disputes this. Mot. at 23; Parks Decl. ¶ 41. Further, there is a risk that the Court may

25  deny class certification or, following initial certification, subsequently decertify the class based on

26  unanticipated individualized issues or manageability concerns. The outcome of a trial (and

27  potential subsequent appeals) are inherently uncertain in terms of both outcome and duration.

28  Further litigation would involve considerable costs and a significant investment of time by the

United States District Court
Northern District of California

1    parties and their respective counsel and would burden the resources of the Court.  Class Counsel

2    believes the proposed settlement is fair, reasonable, adequate, and is in the best interest of the

3    Settlement Class in light of all known facts and circumstances.  Parks Decl. ¶ 25.  Finally, the

4    Court has not received any reactions from Class Members at this time; the Court awaits those

5    responses in conjunction with the final approval hearing.  Thus, the balance of the factors

6    considered by the Court weighs in favor of preliminary approval.

7    **C.**    **Class Notice**

8          1.    <u>Method of Providing Notice</u>

9          Rule 23(c)(2)(B) provides that "[i]n any class action maintained under subdivision (b)(3),

10    the court shall direct to the members of the class the best notice practicable under the

11    circumstances, including individual notice to all members who can be identified through

12    reasonable effort."  The notice must fairly apprise prospective class members of the terms of the

13    proposed settlement and of their options with respect to the settlement. *Eisen v. Carlisle &*

14    *Jacquelin*, 447 U.S. 156, 174 (1974).

15          Following preliminary approval, the Settlement Agreement provides that the Settlement

16    Administrator will send by first class mail a copy of the court-approved notice to all PCMs.

17    Settlement Agreement at 16-18.  This method appears to provide the best notice practicable as not

18    all PCMs are current employees of AMRG.  Parks Decl. ¶ 27; *see Phillips Petroleum Co. v.*

19    *Shutts*, 472 U.S. 797, 811-12 (1985) ("The notice must be the best practicable, reasonably

20    calculated, under all the circumstances, to apprise interested parties of the pendency of the action

21    and afford them an opportunity to present their objections." (internal citations and quotations

22    omitted)).  As such, it is likely that PCMs will receive the best practicable notice of the proposed

23    settlement by U.S. mail.  Therefore, the Court approves the method of notice provided in the

24    Settlement Agreement as it provides the best notice that is practicable under the circumstances.

25    *See* Fed. R. Civ. P. 23(c)(2)(B).

26          2.    <u>Contents of the Notice</u>

27          As to the contents of the notice, Rule 23 requires "[t]he notice must clearly and concisely

28    state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class

United States District Court
Northern District of California

21

certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

The proposed Settlement Notice complies with all these requirements.  In addition, the notice explains in plain English that PCMs may opt-out or object within 60 days, indicates the time and place of the final approval hearing, provides information regarding the attorneys' fees and class representatives' incentive awards, and indicates that additional information regarding the Settlement is available through Class Counsel, whose contact information is provided in the Notice.  The Notice also explains how the settlement fund will be allocated.  Accordingly, the Court finds the contents of the Class Notice comply with Rule 23's requirements.

However, the Court does find certain minor changes appropriate for clarity.

### a.    Section 1 (Why Should You Read This Notice?)

The bracketed portion of this section ("[For Overtime Subclass only" through "November 14, 2014.]") is potentially confusing and unnecessary given the explanation of the subclasses in Section 4.  The parties shall remove this portion.

### b.    Section 4 (The Proposed Settlement)

As this section provides a breakdown of payments by subclass, the parties should include a definition of each subclass prior to an explanation of the payment formulas.  The parties shall add this between paragraphs 2 and 3.

In the last sentence of paragraph 2, the notice states the "Net Settlement Amount will be available for distribution . . ."  As checks will be mailed automatically if the Court grants final approval, this should be changed to "Net Settlement Amount will be distributed . . ."

Also, paragraph 7 refers to "Class Settlement Net Fund."  For consistency, this should be changed to "Net Settlement Amount."

### c.    Section 8 (What Must I Do To Object To the Settlement?)

This section requires PCMs who wish to object to the settlement to file any objection with

United States District Court
Northern District of California

22

the Court and serve it on counsel for the parties.  As filing with the Court will provide adequate notice, the requirement for serving or mailing to the parties should be removed.  In addition, the following instructions on how to submit objections should be included:

> All written objections and supporting papers must be submitted to the Court either by (a) mailing them to United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102; or (b) filing them in person at any location of the United States District Court for the Northern District of California.  All submissions must identify the case name and number (*Ruch v. AM Retail Group, Inc.*, Case No. C-14-5352 MEJ).

3.      Costs of Notice Provision and Settlement Administration

The Settlement Agreement provides that the estimated Administrative Costs associated with providing Notice and administrating payment of claims is $30,000, which shall be deducted from the Settlement Fund.  Settlement Agreement at 10.  As the Agreement also provides that any applicable left over residual amount will be included as part of the distribution of the Net Settlement Fund, this amount appears reasonable.

**CONCLUSION**

In light of the analysis above, the Motion for Preliminary Approval of Class Settlement is **GRANTED** as follows:

1)      This Order incorporates by reference the definitions in the Settlement Agreement and all terms defined therein shall have the same meaning in this Order as set forth in the Settlement Agreement.

2)      The proposed Settlement Class is hereby conditionally certified pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) for purposes of settlement.  The Settlement Class is defined as: "All Store Managers, Assistant Store Managers, Managers in Training, and Sales Associates employed by and on the payroll of AMRG in California at any time from October 10, 2010 through October 5, 2015."  For the Overtime Subclass only, the Settlement Class is defined as "All persons employed by and on the payroll of AMRG as Store Sales Manager of G.H. Bass & Co. in California from November 4, 2013 to November 14, 2014."  Certification of the Settlement Class is solely for settlement purposes and without prejudice in the event the Settlement Agreement is not finally approved or otherwise does not take effect.

United States District Court
Northern District of California

1    3)    The Settlement Agreement is preliminarily approved as fair, adequate, and

2    reasonable pursuant to Federal Rule of Civil Procedure 23(e).

3    4)    The Court appoints and designates Plaintiff Barbara Ruch as class representative

4    for settlement purposes only.

5    5)    The Court appoints Alan I. Schimmel and Michael W. Parks of Schimmel & Parks,

6    APLC as Class Counsel for the Settlement Class.

7    6)    The Court appoints ILYM Group, Inc. as the Settlement Administrator.  The

8    Settlement Administrator shall be responsible for providing notice to the class of this Settlement,

9    and of the preliminary and final approval thereof.

10   7)    Prior to distribution of notice to Potential Class Members, the parties shall file a

11   revised notice form as detailed above by April 7, 2016.  *See supra* at 22:13-23:7.  In addition to

12   the finalized notice, the parties shall include a version that highlights all edits.  If the Court

13   approves the revised notice, it will issue a scheduling order addressing deadlines for notice to the

14   class, opt-out and objection timing, Plaintiff's motion for final settlement approval and motion for

15   attorneys' fees and costs, and the final approval hearing.

16   **IT IS SO ORDERED.**

17

18   Dated: March 24, 2016

19   _____

20   MARIA-ELENA JAMES
     United States Magistrate Judge

21

22

23

24

25

26

27

28