UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BARBARA RUCH,

           Plaintiff,

    v.

AM RETAIL GROUP, INC.
INDIVIDUALLY AND DBA, G.H. BASS
& CO.,

           Defendant.

Case No.  14-cv-05352-MEJ

**ORDER GRANTING FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING
ATTORNEYS' FEES AND COSTS;
JUDGMENT**

Re: Dkt. Nos. 31, 34

## INTRODUCTION

Plaintiff Barbara Ruch ("Plaintiff") filed this putative class action alleging Defendant AM Retail Group, Inc. ("Defendant") violated several provisions of the California's Labor Code and Unfair Competition Law by misclassifying employees as exempt from overtime wages and failing to provide meal and rest breaks, among other things.  *See* Compl., Dkt. No. 1-4.  The Court preliminarily approved the parties' settlement on March 24, 2016.  Prelim. Approval Order, Dkt. No. 28; *Ruch v. AM Retail Grp., Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016).  Plaintiff now moves for final approval of the settlement and for an award of attorney's fees and costs.  Mot. for Final Approval, Dkt. No. 34; Mot. for Fees, Dkt. No. 31.  Defendant filed statements of non-opposition to both motions.  Dkt. Nos. 33, 35.  The Court held a final fairness hearing on September 1, 2016.  Dkt. No. 36.  Having carefully considered the Motions, the relevant legal authority, and the Settlement Agreement and all supporting documents, the Court **GRANTS** final approval of the class action settlement as well as Plaintiff's Motion for Attorneys' Fees and Costs.

## BACKGROUND

**A.**    **Factual Background**

Defendant does business under numerous business names, including G.H. Bass & Co.

United States District Court
Northern District of California

("G.H. Bass").  Compl. ¶¶ 2, 9.  It employed Plaintiff as a Store Sales Manager ("SSM") in its

G.H. Bass store in Petaluma, California from November 4, 2013 until July 17, 2014.  *Id.* ¶¶ 15, 27;

Parks Decl. In Support of Mot. for Preliminary Approval ("Parks Prelim. Decl.") ¶ 10, Dkt. No.

26.  Before November 4, 2013, she was employed by PVH Corp. (the prior owner of G.H. Bass

stores in California) as the Petaluma store's SSM.[1]  Compl. ¶ 14; Parks Prelim. Decl. ¶ 10.  PHV

classified Plaintiff and other SSMs as "exempt" employees, and this classification remained in

effect for G.H. Bass SSMs in California until November 14, 2014.  Parks Prelim. Decl. ¶ 10.

However, Plaintiff alleges her duties primarily consisted of "non-exempt" activities, including

sales, customer service, cashiering, store presentation, store maintenance, opening and closing

procedures, and weekly meetings.  Compl. ¶ 15.  She alleges she was frequently required to work

50-80 hours per week, but her paycheck reflected that she worked only 40 hours per week.  *Id.*

¶ 17.  Plaintiff alleges Defendant mischaracterized the SSM position as exempt from overtime

compensation.  *Id.* ¶ 19.

     In addition to her overtime claims, Plaintiff alleges Defendant failed to provide meal and

rest breaks; instead, they were informed their breaks were "working breaks."  *Id.* ¶ 22.  Plaintiff

also alleges Defendant's employees were forced to incur expenses without reimbursement, such as

expenses related to the use of their personal cell phones and vehicles for business purposes, as

well as purchases of G.H. Bass clothing to wear during work.  *Id.* ¶¶ 24-25.

     Plaintiff filed this proposed class action lawsuit on October 10, 2014 in Sonoma County

Superior Court.  *See* Compl.  She alleges ten causes of action: (1) Failure to Reimburse for

Reasonable Business Expenses, Cal. Lab. Code § 2802; (2) Failure to Pay Overtime

Compensation, *id.* § 510; (3) Failure to Pay for All Hours Worked, Cal. Indus. Welfare Comm'n

Wage Order 4-2001; (4) Failure to Provide Accurate Wage Statements, Cal. Lab. Code § 226(a);

(5) Failure to Keep Accurate Payroll Records, *id.* § 1174(d); (6) Failure to Provide Rest Periods or

Compensation in Lieu Thereof, *id.* § 226.7; (7) Waiting Time Penalties, *id.* §§ 201-02; (8) Unfair

Business Practices, Cal. Bus. & Prof. Code § 17200; (9) Failure to Comply with Private Attorneys

---

[1] AMRG acquired G.H. Bass in November 4, 2013.  Compl. ¶ 15.

1    General Act ("PAGA"), Cal. Lab. Code § 2698; and (10) Statutory and Common Law Retaliation

2    and Termination, *id.* § 1102.5.  Compl. ¶¶ 40-108.  Defendant removed the action to this Court

3    under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1712.  Dkt. No. 1.

4        The parties elected to participate in private mediation.  Dkt. No. 9.  Mediator Michael

5    Dickstein and the parties engaged in extensive pre-mediation exchanges of information in

6    anticipation of the mediation.  Parks Prelim. Decl. ¶ 16.  On October 5, 2015, the parties

7    participated in formal mediation facilitated by Mr. Dickstein, which resulted in a written

8    memorandum of understanding that memorialized the core terms of the proposed settlement.  *Id.*

9    ¶ 17; Mot. for Prelim. App. at 27, Dkt. No. 23.  The parties also spent another several weeks

10   negotiating the long form settlement agreement.  *Id.* (both); Stip. of Class Action Settlement

11   ("Settlement Agreement" or "Settlement"), Dkt. No. 24-1.

12   **B.        Preliminary Approval of the Settlement Agreement**

13       On March 24, 2016, the Court preliminarily approved the Settlement Agreement and

14   conditionally certified the proposed Settlement Class pursuant to Federal Rules of Civil Procedure

15   23(a) and (b)(3) for purposes of settlement only.  *See* Prelim. Approval Order at 23.  The

16   Settlement Class was defined as "all Store Managers, Assistant Store Managers, Managers in

17   Training, and Sales Associates employed by and on the payroll of AMRG in California at any time

18   from October 10, 2010 through October 5, 2015."[2]  *Id.*  The Court appointed Alan I. Schimmel

19   and Michael W. Parks of Schimmel & Parks, APLC ("S&P") as Class Counsel for the Settlement

20   Class, and Ruch as class representative for settlement purposes only.  *Id.* at 24.  The Court also

21   appointed ILYM Group, Inc. ("ILYM") as the Settlement Administrator.  *Id.*

22       Under the terms of the Settlement, Defendant will pay a gross Settlement Amount[3] of

[2] There are three proposed subclasses:  (1) the "Unpaid Overtime Subclass" consisting of all California Store SSMs of G.H. Bass & Co. from November 4, 2013 to November 14, 2014;  (2) the "Meal/Rest Break Premium Pay Subclass" comprising all California store employees of AMRG from October 12, 2010 to October 5, 2015; and (3) the "Reimbursement Subclass" consisting of all persons employed by and on the payroll of AMRG in California at any time from October 10, 2010 through October 5, 2015.  Prelim. Approval Order at 3-4.

[3] Throughout this Order, the Court uses capitalized terms in the manner in which they are defined in the Settlement Agreement.

United States District Court
Northern District of California

$1,150,000 into a Settlement Fund, with no reversion of funds to Defendant.  Settlement

Agreement at 8, 13-14.  The Settlement does not require Settlement Class Members to submit a

claim form to obtain payment; ILYM will calculate funds owed to each Class Member pursuant to

the terms of the Settlement and mail checks to them.  *Id*. at 11-12.  In the event that any amounts

to be distributed to the Settlement Class remain unpaid, that residual amount will be redistributed

to the Settlement Class, unless the total amount of unclaimed checks are equal to or less than

$1,000, in which event the balance will be paid to The Legal Aid Society–Employment Law

Center.  *Id*. at 14.  The Settlement Agreement will release all claims alleged in the Complaint and

any claims that could have been raised based on the factual allegations set forth in the Complaint.

Settlement Agreement at 14-15.

Additionally, Plaintiff requested $345,000 in attorneys' fees, up to $20,000 in litigation

costs, and $5,000 for her services and time as the Class Representative, which will be subtracted

from the Gross Settlement amount.  *Id*. at 9.  The following amounts are also to be paid out of the

$1.15 million Gross Settlement Amount: (1) $30,000 to ILYM to administer the class notice and

settlement process; and (2) $7,500 to the California Labor and Workforce Development Agency

("LWDA"), constituting the State of California's 75% statutory share of the $10,000 allocation by

the PAGA claim for relief.  *Id*. at 10.  The Net Settlement Amount disbursed to Settlement Class

Members will be no less than $742,500.  *Id*. at 11.  The Settlement Agreement will bind all

Settlement Class Members.  *Id*.

A complete summary of the Settlement Agreement can be found in the Court's Preliminary

Approval Order.

**D.      Class Notice**

Pursuant to the terms of the Settlement Agreement, the Court's Preliminary Approval

Order, and the Court's Order approving the revised class notice,[4] notice of the Settlement was

provided as follows:

---

[4] The Court requested "minor changes" to the original proposed notice.  Prelim. Approval Order at
22-23.  The Court approved the revised notice.  *See* Dkt. Nos. 29 (Revised Notice); 30 (Order
Approving Revised Notice).

1      1.     <u>Identification of Class Members</u>

On April 19, 2016, ILYM received the Court-approved text for the class notice.  First Molina Decl. ¶ 5, Dkt. No. 34-1.  ILYM prepared a draft of the formatted "Notice of Pendency of Class Action, Proposed Settlement and Hearing Date" ("Notice Packet"), which the parties' Counsel approved prior to mailing.  *Id*.

On April 21, 2016, ILYM received the class data file from Defendant.  *Id.* ¶ 4.  The data file included the name, last known mailing address, last known telephone number, total number of workweeks, social security number, employment dates, brand/job status if classified exempt, and status as keyholder/non-keyholder.[5]  *Id.*  Defendant's data file was checked against ILYM's database for duplicates and other possible discrepancies.  *Id*.  The resulting Class List contained 3,669 Settlement Class Members.  *Id.*

As part of the preparation for mailing, all 3,669 names and addresses contained in the Class List were processed against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS")[6] to update and confirm the Settlement Class Members' mailing addresses.  *Id*. ¶ 6.  If the NCOA database contained an updated address, the Notice Packet was sent to that address.  *Id*.  Otherwise, the Notice Packet was mailed to the original address provided by Defense Counsel.  *Id*.  Additionally, because 17 of the individuals on the Class list never actually worked for Defendant and were inadvertently included on the Class List, the final Class List was reduced to 3,652 Settlement Class Members.  *Id.* ¶ 8.

2.     <u>Notice to Class Members</u>

On May 5, 2016, ILYM mailed a Notice Packet to each of the 3,669 Settlement Class Members identified in the Class List.  *Id.* ¶ 7, Ex. A (copy of the mailed class notice packet). After this initial mailing, 793 Notice Packets were returned to ILYM's office as undeliverable.  *Id*. ¶ 9.  Of the 793 returned Notice Packets, 37 were returned with a forwarding address provided by

<div style="margin-left:2em; font-size:smaller;">

[5] The parties also categorize employees who are primarily impacted by the unpaid reimbursement claims as "Keyholder Employees," defined as "all Store Managers, Assistant Store Managers, and Managers in Training employed by and on the payroll of AMRG in California at any time from October 10, 2010 through October 5, 2015."  Settlement Agreement at 7.

[6] The NCOA database contains requested change of addresses filed with the USPS.

</div>

United States District Court
Northern District of California

1    the USPS; ILYM subsequently re-mailed those to the forwarding address.  *Id*.  A computerized

2    skip trace on the 756 Notice Packets returned without a forwarding address revealed an additional

3    552 updated addresses.  *Id.*  ILYM mailed Notice Packets via U.S. First Class Mail to those

4    updated addresses.  *Id.*  In addition, one Settlement Class Member contacted ILYM during the

5    response period requesting a copy of the mailed Notice Packet.  *Id.*  As of July 28, 2016, ILYM

6    had re-mailed a total of 590 Notice Packets.  *Id*. ¶ 10.  Specifically, ILYM re-mailed 37 Notice

7    Packets as a result of a forwarding address provided by the USPS, 552 as a result of ILYM's skip

8    tracing efforts, and one as a result of a re-mail request by a Settlement Class Member.  *Id*.  Over

9    92% of the Notice Packets were deemed deliverable.  Of the 277 undeliverable Notice Packets

10   (8% of 3,652 total Notice Packets), no updated addresses were found as to 204 even after ILYM's

11   skip trace, and 73 were returned to ILYM following a re-mailing to an updated address.  *Id*. ¶¶ 7-

12   11.[7]

13        3.    CAFA Notice

14        CAFA requires that notice of all federal class action settlements be sent to the appropriate

15   state and federal officials as a condition of obtaining court approval of the settlement.  In non-

16   banking cases, the "appropriate federal official" is the Attorney General of the United States.  *See*

17   28 U.S.C. § 1715(a)(1)(A).  Notice must also be sent to the "appropriate State official of each

18   State in which a class member resides."  28 U.S.C. § 1715(b).

19        Defendant gave notice of the Settlement and other information showing compliance with

20   CAFA to the appropriate federal and state officials on March 28, 2016, more than 90 days before

21   the final approval hearing.  *See* Parks Declaration In Support of Mot. for Final Approval ("Parks

22   Final Decl.") ¶ 9 & Ex. D (Defense counsel letter to CAFA Coordinator at U.S. Department of

23   Justice and California Office of the Attorney General), Dkt. No. 34-2.  During the fairness hearing,

24   counsel for Defendant confirmed he had not received a response from federal or state officials.

25

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
     [7] After the fairness hearing, ILYM performed an additional skip trace on the 277 undeliverable
28   Notice Packets.  *See* Suppl. Molina Decl. ¶ 3, Dkt. No. 38.  ILYM located an additional 39
     updated addresses and delivered the Notice Packets to those addresses.  *Id*. ¶¶ 3-4.

United States District Court
Northern District of California

4.       Opt-Outs and Objections

The Settlement requires Class Members who wish to object to the Settlement Agreement to file with the Court a written statement objecting to the Settlement Agreement, either by mailing a statement to the Court or filing one in person at any location of the United States District Court for the Northern District of California.  Settlement Agreement at 16; First Molina Decl., Ex. A at 4.  The Settlement further requires objections to identify the case name and number and to be submitted to the Court no later than 60 days from the date the Notice was mailed.  First Molina Decl., Ex. A at 4.  Settlement Class Members who wish to opt out of the Settlement could do so by signing and mailing a request clearly stating their intent to be excluded from the Settlement Class.  *Id*.  Opt-out statements were required to be mailed to the Claims Administrator and postmarked no later than 60 days from the date the Notice was mailed.  *Id.*

The deadline to file an objection to or request exclusion from the Settlement was July 5, 2016.  *Id.*  As of July 28, 2016, ILYM had not received any objections or requests for exclusion from the Settlement.  First Molina Decl. ¶¶ 12-13.  At the fairness hearing, Mr. Parks confirmed he was not aware of any objections or opt-outs.  As of the date of this Order, no objections to the Settlement have been filed with the Court, and no Class Members appeared at the fairness hearing.

**DISCUSSION – FINAL APPROVAL**

**A.       Legal Standard**

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nonetheless, "[t]he claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."  Fed. R. Civ. P. 23(e).  "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights."  *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).  "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1025 (9th Cir. 1998).

Additionally, Rule 23(e) requires the Court to determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable."  *Id*. at 1026; Fed. R. Civ. P. 23(e)(2) ("If the

United States District Court
Northern District of California

proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.").  To assess whether a settlement proposal is fair, adequate, and reasonable, the Court must generally balance a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and  (8) the reaction of the class members to the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citations omitted). Where a settlement agreement is negotiated prior to formal class certification, it is subject to a higher level of scrutiny, and a court's approval order must ensure that the settlement is not the product of collusion among the negotiating parties.  *Id.* at 946-47.  But, "[g]enerally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014).

**B.     Adequacy of Notice**

Rule 23(e) requires that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982) ("The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." (citation omitted)).  "Rule 23(e) requires notice that describes 'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015) (quotation omitted).  The Court's role in reviewing a proposed settlement is to represent those class members who were not parties to the settlement negotiations and agreement. *See, e.g.*, *S.F. NAACP v. S.F. Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1027 (N.D. Cal. 1999).

As discussed above, the Court approved the form and content of the revised proposed Class Notice ILYM used to create the Notice Packets it mailed to Class Members.  The Court also approved the Notice Plan as set forth in the Settlement.  Prelim. Approval Order at 21.  The notice process described in the Stephanie Molina's Declaration (Dkt. No. 34-1) and summarized above, comports with the Notice Plan.  Moreover, ILYM employed several quality control measures to locate Potential Class Members, including checking lists of addresses against the NCOA database and performing computerized skip traces to locate Potential Class Members when USPC returned their Notice Packets as undeliverable.[8]  By the time of the fairness hearing, only 8% of the 3,652 Notice Packets were deemed undeliverable; ILYM represents an undeliverable rate between 10%-20% is typical in class action settlements similar to this one.  *See* First Molina Decl. ¶ 11; Suppl. Molina Decl. ¶ 4.

With respect to those Settlement Class Members whose Notice Packets were not delivered, Federal Rule of Civil Procedure 23 does not require actual notice of settlement to class members in time to opt out of the class; rather, due process requires notice be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane*, 339 U.S. at 314-15, 319 ("Therefore notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since any objections sustained would inure to the benefit of all.  We think that under such circumstances reasonable risks that notice might not actually reach every beneficiary are justifiable."); *see also Silber v. Mabon*, 18 F.3d 1449, 1454-55 (9th Cir. 1994) (concluding, under *Mullane* and other precedent, that "the appropriate standard is the 'best notice practicable'"—not actual notice).  Under the circumstances, the Court finds ILYM's method of providing notice to Class Members was the best practicable means of apprising Class Members of the Settlement.  *See Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 680 (N.D. Cal. 2016) (finding notice by U.S. Mail best notice available under circumstances).  Consequently,

---

[8] Defendant does not maintain personal email addresses for current and former employees (*see* Suppl. Parks Decl. ¶ 12, Dkt. No. 37), and thus notice could not be provided by using electronic means instead of or in addition to U.S. Mail.

United States District Court
Northern District of California

notice was adequate as of July 28, 2016.

**C.      Fairness, Adequacy, and Reasonableness**

The Court preliminarily found the Settlement "fair, reasonable, and adequate" under Rule 23(e)(2).  Prelim. Approval. Order at 16.  The preliminary approval stage is "an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties."  *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013) (citation omitted).  The Court now examines the Settlement Agreement anew to ensure it is "fair, reasonable, and adequate" in light of the *In re Bluetooth* factors.  654 F.3d at 946.  When settlement occurs before formal class certification, settlement approval requires a higher standard of fairness in order to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the class.  *See Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

1.      *In re Bluetooth* Factors

*The strength of the Plaintiff's case*.  After Plaintiff filed the action, Defendant changed its policy to convert store sales managers from exempt to non-exempt employees.  Mot. for Final Approval at 19; Settlement Agreement at 4; Parks Decl. In Support of Mot. for Atty. Fees ("Parks Fees Decl.") ¶¶ 25, 52, Dkt. No. 32.  While this suggests Defendant had exposure on this claim, Defendant vigorously disputes liability in this matter, and it did not change the challenged policies that were applicable to the other subclasses.  While discovery confirmed contested issues existed regarding the application of those policies, there is evidence that 83% of the "Meal/Rest Break Premium Pay" subclass members received the meal and rest breaks to which they were entitled.  *See* Parks Prelim. Decl. ¶¶ 14-15, 42(d).  Accordingly, not all of Plaintiff's claims appeared to have the same potential degree of success, and Plaintiff would need to overcome significant barriers to make her case.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010) (where plaintiff faced significant barriers such as establishing existence of employer-employee relationship, first *In re Bluetooth* factor favored settlement).

*The risk, expense, complexity, and likely duration of further litigation*.  Difficulties and risks of litigating weigh in favor of approving a class settlement.  *See Rodriguez v. W. Publ'g*

United States District Court
Northern District of California

10

*Corp.*, 563 F.3d 948, 966 (9th Cir. 2009).  This action contains three subclasses and more than

3,500 class members.  Plaintiff concedes proving her claims would be "complicated."  Parks

Prelim. Decl. ¶ 43.  Absent settlement, Plaintiff anticipates a vigorous and lengthy challenge from

Defendant with respect to certification and the merits of the action.  *Id.*  Plaintiff also anticipates

Defendant would appeal if she prevailed at trial.  *Id.* ¶ 41.  Even if Plaintiff ultimately prevailed on

her claims, an appeal would delay recovery to Settlement Class Members and might increase the

fees Class Counsel would seek to recover from any ultimate award.

   *The risk of maintaining class action status throughout the trial*.  Absent settlement,

Defendant would oppose a motion for class certification on the basis that trial would not be

manageable.  Settlement Agreement at 8; Mot. for Final Approval at 22.  In a complex case that

covers a merger of retail stores, contains several sub-classes, and differentiates between different

types of employees, maintaining certification cannot be guaranteed.

   *The amount offered in settlement*.  Defendant removed this case pursuant to CAFA, which

permits removal where the amount in controversy exceeds $5,000,000 exclusive of interest,

attorneys' fees, and costs.  Based on Plaintiff's allegations, Defendant calculated the amount in

controversy to be approximately $6 million, including $2,741,357 in waiting time penalties;

$902,428 in rest break penalties; $668,750 in wage statement penalties; $155,664 in unpaid

overtime compensation; $240,550 in unreimbursed expenses, and $1,310,375 constituting 25% of

the PAGA penalties.  Not. of Removal ¶ 19.  Under the terms of the Settlement Agreement,

Defendant will pay $1,150,000, of which class members will share at least $742,500[9] as follows:

---

[9]  Because Plaintiff's Counsel incurred costs less than the $20,000 originally contemplated in the
Settlement Agreement, the Court calculates the Net Settlement Amount to be $744,289.  Using
Defendant's $6 million valuation of the case, the Net Settlement Amount amounts to more than
12% of the maximum recovery.  Courts in this district have approved settlements representing as
low as 5% of the plaintiffs' maximum recovery.  *See Balderas v. Massage Envy Franchising,
LLC*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (preliminarily approving net settlement
representing 5% of plaintiff's estimated maximum possible recovery at trial); *see also Villanueva
v. Morpho Detection, Inc.*, 2016 WL 1070523, at *4 (N.D. Cal. Mar. 18, 2016) (approving
settlement representing approximately 24% of maximum recovery) (citing *Gaudin v. Saxon
Mortg. Servs., Inc.*, 2015 WL 7454183, at *6 (N.D. Cal. Nov. 23, 2015) (net settlement amount
representing 13.6% of estimated maximum possible recovery); *Stovall-Gusman v. Granger, Inc*.,
2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (net settlement amount representing 7.3% of
estimated maximum recovery)).

United States District Court
Northern District of California

Based on a total of approximately 36 overtime subclass members who worked approximately 914 work weeks, and after deductions for attorneys' fees and costs, the overtime subclass is receiving approximately $183.14 per week in settlement of wage claims and, additionally sharing $167,513.40 divided in half with one half shared equally among all subclass members and the other half shared equally among terminated subclass members as penalties and interest paid on top of the settlement amounts allocated to wages. The Meal and Rest break subclass is sharing in $167,513.40 allocated as wages based on the number of workweeks for members of the subclass (all AMRG employees during Class Period), with an additional $167,513.40 divided in half among the subclass with one half shared equally among all subclass members and the other half shared equally terminated subclass members as penalties and interest paid on top of the settlement amounts allocated to wages. The Reimbursement subclass of Keyholder members and non-Keyholder members share $74,450.40 which is divided under the Settlement Agreement for Keyholders, those responsible for tasks involving vehicle use, receiving seventy-five (75%) of the Reimbursement subclass amount and non-Keyholders receiving twenty-five (25%) of the Reimbursement subclass amount.

Parks Final Decl. ¶ 8.  ILYM estimates each participating Class Member "will receive an estimated average gross payment of $203.86, with the estimated highest gross payment being $15,511.50, and the estimated lowest gross payment being $23.22."[10]  First Molina Decl. ¶ 15.  The Settlement does not require Class members to fill out a claim form; ILYM will mail them a check (withholding taxes as appropriate).  The Net Settlement Fund includes 25% of the $10,000 Defendant is paying to settle the PAGA claim, the other 75% being paid to the California LWDA.  The Court agrees with Plaintiff that the Settlement is "within the range of reasonableness for the benefit of the class members."  Parks Prelim. Decl. ¶ 37; *see also* Parks Fees Decl. ¶ 27.  Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (citation omitted).

*The extent of discovery completed and the state of the proceedings*.  Courts often "look to the amount of exchanged information prior to settlement to determine whether the parties have made an informed decision to settle the case."  *Willner v. Manpower Inc.*, 2015 WL 3863625, at *4 (N.D. Cal. June 22, 2015) (citation omitted).  The parties engaged in significant formal and

---

[10] Many of the Settlement Class Members were seasonal or temporary employees.  Parks Prelim. Decl. ¶ 22.

United States District Court
Northern District of California

1  informal discovery.  In particular, Plaintiff obtained electronic spreadsheets detailing

2  compensation and time worked by putative class members, which allowed Plaintiff to accurately

3  estimate the range of possible class-wide recovery.  Parks Prelim. Decl. ¶ 19.  Plaintiff also

4  deposed Defendant's corporate designee for a full day.  *Id*. ¶ 16.  The parties participated in

5  private mediation with an experienced mediator and prepared for the session by exchanging

6  extensive amounts of information.  *Id*.  As such, the parties had sufficient information to make an

7  informed decision with respect to settlement.

8      *The experience and views of counsel*.  The experience of Class Counsel also weighs in

9  favor of final approval.  "Parties represented by competent counsel are better positioned than

10  courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *In*

11  *re Pac. Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995).  Class Counsel are experienced class

12  action attorneys who have been qualified as lead class counsel by other California courts, both in

13  employment wage and hour litigation and in other types of cases.  Prelim. Approval Order at 12;

14  Parks Prelim. Decl. ¶ 34; Parks Fees Decl. ¶¶ 32-35.  They have extensive experience litigating

15  similar wage and hour class actions.  *See id*. (all).  Based on their experience and their knowledge

16  of the current case, Mr. Schimmel and Mr. Parks believe the settlement is fair, reasonable, and

17  adequate.  Parks Prelim. Decl. ¶ 36.

18      *The presence of a governmental participant*.  Although no governmental entity is a party to

19  these proceedings, the United States and California Attorneys General were notified of the

20  settlement pursuant to the notice provisions of CAFA.  *See* 28 U.S.C. § 1715.  No federal or state

21  official has objected to or raised concerns about the Settlement.

22      *The reaction of the class members to the proposed settlement*.  "[T]he absence of a large

23  number of objections to a proposed class action settlement raises a strong presumption that the

24  terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision*,

25  559 F. Supp. 2d at 1043 (citation omitted).  None of the Potential Class Members opted out of or

26  objected to the Settlement Agreement by the deadline for doing so.  First Molina Decl. ¶¶ 12-14.

27  "By any standard, the lack of objection of the Class Members favors approval of the Settlement."

28  *Knight v. Red Door Salons*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009) (citation omitted).

Having considered the *In re Bluetooth* factors, the Court finds they weigh in favor of settlement.

### 2.    Potential Collusion

Additionally, where a settlement is agreed upon prior to class certification, courts must also consider whether the settlement is the product of collusion among the negotiating parties. *In re Bluetooth*, 654 F.3d at 947.  The parties reached an agreement in principle when they participated in a formal private mediation, then spent several weeks negotiating the details of the Settlement Agreement and the class notice.  The Court previously found this type of arms-length negotiation weighed in favor of preliminary approval (Prelim. Approval Order at 17) and finds this to be the case again on final approval.

In addition to the procedure by which the parties arrived at their settlement, the Court must also look for other signs that may demonstrate collusion, including (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.  *In re Bluetooth*, 654 F.3d at 947.  With respect to the first factor, the monetary distribution to the Class constitutes approximately 65% of the Gross Settlement Fund, while Class Counsel will receive approximately 30% of the Gross Settlement Fund.  As discussed below, 30% is not necessarily disproportionate, though it does exceed the 25% benchmark in the Ninth Circuit.  As to the second factor, the Settlement Agreement contains a clear sailing provision in which Defendant agrees not to object to Class Counsel's request for fees constituting up to 30% of the Settlement Fund.  Settlement Agreement at 9.  Nevertheless, because the fee will be awarded from the same common fund as the recovery to the Class, this particular clear sailing provision does not signal the possibility of collusion.  *See In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5158730, at *14 (N.D. Cal. Sep. 2, 2015) (where attorney's fees will be awarded from the same common fund as the recovery to the

class, where counsel did not negotiate fees separate and apart from class funds, and where no portion of the common fund would revert to defendant, clear sailing provision did not signal possibility of collusion).  The third factor also does not apply as no money will revert to Defendant.  Instead, "[i]n the event any amounts to be distributed to the Settlement Class remain unpaid, that residual amount will be redistributed to the Settlement Class, unless the total amount of unclaimed checks are equal to or less than $1,000, in which event the balance" will be paid to a *cy pres* recipient, namely, the Legal Aid Society-Employment Law Center.  Settlement Agreement at 14.  The Employment Law Center has a strong nexus to the members of this wage and hour employment class.

In sum, the Court finds these facts do not raise an inference of collusion.

### 3.   Summary

Given the foregoing analysis, the Court finds that even under heightened scrutiny, the Settlement Agreement is fair, reasonable, and adequate to warrant final approval.

**D.    Certification of the Settlement Class**

In the Court's Preliminary Approval Order, the Court considered in detail whether all of the elements of Rule 23 were met so as to warrant certification of the Settlement Class.  *See* Prelim. Approval Order at 16-22.  "'Because the Settlement Class has not changed, the Court sees no reason to revisit the analysis of Rule 23.'"  *G.F. v. Contra Costa Cty.*, 2015 WL 7571789, at *11 (N.D. Cal. Nov. 25, 2015) (quoting *Sadowska v. Volkswagen Grp. of Am., Inc.*, 2013 WL 9600948, at *10 (C.D. Cal. Sept. 25, 2013)).  As the Court is unaware of any changes that would alter its analysis, the Settlement Class is properly certified pursuant to Rule 23(b)(3) for settlement purposes.

**E.    Summary Regarding Final Approval**

Given the foregoing analysis, the Court finds final approval of the Settlement Agreement is warranted under the circumstances.  The Court now turns to the matter of Class Counsel's Motion for Attorneys' Fees and Costs.

### DISCUSSION – ATTORNEYS' FEES AND COSTS

Class Counsel seeks $345,000 in attorney's fees, or 30% of the Gross Settlement Fund, and

$18,211 in expenses.  *See* Parks Fees Decl. ¶¶ 42, 44; Parks Final Decl. ¶ 3; Parks Suppl. Decl.

¶ 13.  Class Counsel also seeks a service award for Plaintiff in the amount of $5,000, and $30,000

in administrative costs for ILYM.  Parks Fees Decl. ¶¶ 53, 31; *see also* Suppl. Molina Decl..

Defendant does not object to the requests.  Dkt. No. 33.

**A.      Attorneys' Fees**

   1.      Legal Standard

   Courts have discretion to award attorneys' fees to a prevailing plaintiff if: "(1) fee-shifting

is expressly authorized by the governing statute; (2) the opponents acted in bad faith or willfully

violated a court order; or (3) the successful litigants have created a common fund for recovery or

extended a substantial benefit to a class."  *In re Bluetooth*, 654 F.3d at 941.  An award of

attorneys' fees is authorized in this case by the governing statutes,[11] and because Plaintiff has

created a common fund for recovery and extended a substantial benefit to the class.  Nonetheless,

"courts have an independent obligation to ensure that the award, like the settlement itself, is

reasonable, even if the parties have already agreed to an amount."  *Id*. (citations omitted).

   In this circuit, there are two primary methods used to calculate reasonable attorneys' fees:

the lodestar method and the percentage-of-recovery method.  *In re Online DVD-Rental*, 779 F.3d

at 949.  Courts have the discretion to award fees employing "either the lodestar method or the

percentage-of-recovery method."  *In re Bluetooth*, 654 F.3d at 942 (citation omitted).  Whichever

method they choose to employ, courts should cross-check the fees awarded using the second

method.  *Id*. at 944-45.  In evaluating the reasonableness of a percentage-of-fund award or a

lodestar, courts consider the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the
> questions involved, (3) the skill requisite to perform the legal service
> properly, (4) the preclusion of other employment by the attorney due
> to acceptance of the case, (5) the customary fee, (6) whether the fee
> is fixed or contingent, (7) time limitations imposed by the client or
> the circumstances, (8) the amount involved and the results obtained,
> (9) the experience, reputation, and ability of the attorneys, (10) the

---

[11] The California Labor Code also provides for the recovery of reasonable attorneys' fees and
costs in connection with the claims Plaintiff asserted in this action.  *See* Cal. Lab. Code § 1194(a)
(in actions to recover minimum wage or legal overtime compensation), § 2802(c) (in actions for
reimbursement of necessary expenditures).

United States District Court
Northern District of California

"undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). The most important factor is the benefit counsel obtained for the class. *In re Bluetooth*, 654 F.3d at 942. Finally, "the lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).

The Court analyzes Class Counsel's request for fees under percentage-of-funds method and confirms the result by applying a lodestar analysis.

### 2.    Percentage of Funds Analysis

In the Ninth Circuit, the "benchmark" percentage for an award of attorneys' fees in a class action is 25%. *In re Bluetooth*, 654 F.3d at 942. This "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

The Court finds several factors weigh in favor of awarding more than the benchmark 25%. Class Counsel is experienced in this type of litigation and diligently managed the case and also handled the matter over the past 20 months on a purely contingent basis. And most significantly, Class Counsel secured substantial results for Class Members, both terms of monetary compensation and also in spurring Defendant to change its employee classifications. Indeed, after Plaintiff filed this action, Defendant reclassified Bass store managers as non-exempt employees entitled to overtime wages for the overtime hours they worked. Parks Fees Decl. ¶¶ 25, 52. Assuming the twenty employees in this subclass continued to work the same overtime hours they had prior to the inception of the lawsuit, Plaintiff estimates the economic value of the change in policy alone amounts to $242,000 to $275,000 on an annual basis, or $443,667 to $504,167 to the present. Parks Suppl. Decl. ¶¶ 3-6. Because the Gross Settlement Fund does not reflect the lasting, non-monetary impact Class Counsel achieved in this case, the Court finds it is appropriate, in this instance, to exceed the 25% benchmark by 5% in assessing the percentage of funds.

United States District Court
Northern District of California

3.      Lodestar Comparison

The lodestar represents a reasonable hourly fee multiplied by the number of hours reasonably expended on the litigation.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar figure is presumptively reasonable.  *Clark v. City of L.A.*, 803 F.2d 987, 990 (9th Cir. 1986).

a.      Hourly Rate

To determine the appropriate lodestar amount, courts first assess the reasonableness of the hourly billing rate.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  To determine whether rates are reasonable, courts must identify the relevant community and assess the prevailing hourly rate in that community for similar services by lawyers of reasonably comparable skill, experience, and reputation.  *See id.* at 979.  "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits."  *Id.*  Here, the relevant community is the San Francisco Bay Area, and the reasonableness of rates charges should therefore be determined by reference to the rates charged by Bay Area attorneys with commensurate skill, experience, and reputation.

Plaintiff seeks an hourly rate of between $175 and $730 per hour depending on the particular support staff, attorney, or partner.  Parks Fees Decl. ¶¶ 40, 45, 47 & Ex. A.  In support of the rates, skill, experience, and reputation of Class Counsel, Michael Parks describes S&P; the experience, skill, and efforts of the timekeepers who worked on this matter; and S&P's method for calculating the lodestar.  *Id.* ¶¶ 32-55.  Based on the Parks Fees Declaration, the Court finds Class Counsel and the time-keepers on this matter are experienced and tested in the area of complex litigation.  The Court further finds Class Counsel has demonstrated that the range of requested rates are in line with the overall range of market rates in this District for attorneys and for litigation support staff of similar abilities and experience.  *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (district court did not abuse its discretion in awarding 2008 hourly rates for Bay Area attorneys of up to $875 for a partner, $700 for an attorney with 23 years of experience, $425 for an attorney with approximately five years of experience, and $190 for paralegals); *see also Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL

1   2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys of

2   between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support

3   and paralegals).  Under the circumstances, the Court is satisfied Class Counsel's hourly rates fall

4   within the range of reasonable fees.

5                           *b.      Hours Expended*

6           Beyond establishing a reasonable hourly rate, a party seeking attorneys' fees bears the

7   burden to "document[ ] the appropriate hours expended."  *Hensley*, 461 U.S. at 437.  Such an

8   applicant must exercise sound "billing judgment" as to the number of hours worked, eliminating

9   excessive, redundant, or unnecessary hours, and provide billing records supporting the time

10  claimed.  *Id.* at 433-34.  Class Counsel "is not required to record in great detail how each minute

11  of his time was expended," but should "identify the general subject matter of his time

12  expenditures."  *Id.* at 437 n.12; *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000)

13  (quoting *id.*).

14          From the inception of the matter until May 4, 2016, Class Counsel spent 434 hours

15  litigating the case.  Parks Fees Decl. ¶ 41 & Ex. A.  Between May 5, 2016 and September 1, 2016,

16  Class Counsel spent another 46.9 hours on this action; and since September 1, 2016, Class

17  Counsel spent 8.5 additional hours.  Parks Suppl. Decl. ¶¶ 8-9 & Ex. A.  Mr. Parks notes staffing

18  and billing were handled in a reasonable manner.  Parks Fees Decl. ¶ 51.  A single lawyer handled

19  appearances except for the mediation, which two attorneys attended.  *Id.*  Mr. Parks reviewed all

20  the time entries being submitted in connection with the Fees Motion and exercised his billing

21  judgment to exclude duplicative or unnecessary time, such that only time devoted to this matter is

22  included.  *Id.* ¶ 40.

23          The Court finds no reason to believe the reported hours are unreasonable under the

24  circumstances.  As such, the Court finds the number of hours spent by S&P was reasonably

25  expended on the litigation and settlement of this case.

26                           *c.      Enhancement or Multiplier*

27          Class Counsel calculates the lodestar fee for the work performed through May 4, 2016 as

28  $317,634.50 (Parks Fees Decl. ¶ 41 & Ex. A), and for the additional work performed through

United States District Court
Northern District of California

19

United States District Court
Northern District of California

September 1, 2016 as $32,764 (Parks Supp. Decl. Ex. A); in total, the lodestar fee is $350,398.50. Class Counsel's request for $345,000 is below their lodestar fee. The requested fee accordingly does not represent a lodestar enhancement or multiplier.

    4.   Conclusion

The circumstances of this case warrant a slight upward departure from the 25% benchmark. The reasonableness of Plaintiff's percentage-of-fund request is confirmed by the lodestar comparison. The Court in its discretion accordingly grants Plaintiff's motion and awards it attorneys' fees in the amount of $345,000.

**C.**     **S&P's Costs**

S&P itemized the costs it incurred in the course of litigating the action. Parks Fees Decl. ¶¶ 43-44 & Ex. B; Parks Final Decl. ¶¶ 3-7, Exs. B-C; Parks Suppl. Decl. ¶¶ 13-14. The Court has reviewed the records submitted and finds the requested cost award of $18,211 is reasonable and approves them.

**D.**     **Service Award**

The terms of the Settlement Agreement provide that Plaintiff should receive a service award of $5,000 to compensate her for her efforts on behalf of the Class. Courts have the discretion to approve service or "incentive" awards to representative plaintiffs in class actions as compensation for their time and effort for the benefit of others, and for having undertaken the risks inherent in serving as a named plaintiff. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003); *In re Mego*, 213 F.3d at 463; *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1994). In evaluating the reasonableness of a requested award, courts should consider factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977 (internal punctuation and citation omitted). Additionally, courts focus on the number of class representatives, the average incentive award permitted by courts, and the proportion of the entire settlement that is spent on the incentive award. *In re Online DVD-Rental*, 779 F.3d at 947 (approving a $5,000 incentive award for each of nine class representatives even where each class member only received $12).

It is undisputed that Plaintiff materially assisted in this litigation.  She assisted Class Counsel in their investigation of the claims, was involved in the preparation of written discovery responses, participated in preparation and attendance for her deposition, assisted with the preparation for the deposition proceedings and discovery, and materially participated in the mediation and post-mediation settlement process.  Parks Prelim. Decl. ¶ 54.  Counsel described Ms. Ruch's participation as "critical to the prosecution of the case."  *Id.*

A $5,000 Service Award is squarely within the range of what other courts in this District have approved.  *See, e.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015) ("[I]n this district, a $5,000 incentive award is presumptively reasonable."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015) (approving $10,000 incentive award).  Accordingly, the Court finds the service award reasonable and approves it.

**E.      ILYM's Administrative Fees**

ILYM submitted a detailed estimate of the total fees and costs it will incur in connection with the administration of the settlement, showing these costs will exceed the $30,000 flat rate it is charging for its services.  *See* Suppl. Molina Decl, Ex. A.  The Court finds the administrative fees incurred reasonable and approves a payment of $30,000 to ILYM.

**CONCLUSION**

Based on the foregoing, the Court **GRANTS FINAL APPROVAL** of the Settlement Agreement (Dkt. No. 24-1), which is incorporated by reference in this Order, and **GRANTS** Plaintiff's Motion for Attorney's Fees and Costs.  The Court thus **ORDERS** as follows:

(1) The Settlement Class and Subclasses are finally certified for purposes of settlement only.

(2) The Court confirms the appointment of Plaintiff Barbara Ruch as class representative for settlement purposes and grants her a service award of $5,000.

(3) The Court confirms the appointment of ILYM Group Inc. as Settlement Administrator and grants ILYM costs in the amount of $30,000.

(4) The Court confirms the appointment of Schimmel & Parks, APLC as Class Counsel and approves a fee award of $345,000 as well as $18,211 in costs.

United States District Court
Northern District of California

(5)  Defendant shall remit the $1,150,000 Settlement Fund to the Settlement Administrator pursuant to the terms of the Settlement Agreement.

(6)  Pursuant to the terms of the Settlement Agreement, the Settlement Administrator shall distribute Settlement Payments to Settlement Class Members in an amount totaling no less than $744,289, and $7,500 to California's Labor and Workforce Development Agency.

(7)  Pursuant to the Settlement Agreement, the Court retains jurisdiction over the Parties, and over the Settlement Agreement in order to: (1) monitor and enforce compliance with the Settlement Agreement and/or any related order of this Court; and/or (2) resolve any disputes concerning the interpretation or implementation of this Settlement Agreement or the administration of benefits in this Settlement Agreement, including disputes over entitlement to payments sought by Settlement Class Members or Class Counsel.

(8)  No later than 125 days after the entry of this Order, the Parties shall file a status report describing the status of any uncashed checks (including the number of Settlement Class Members whose checks were not cashed and the total amount of the uncashed checks).  If residual amounts have or will be redistributed to the Settlement Class, the Parties shall describe the manner and timing of redistribution.

(9)  The Court **DISMISSES** this action **WITH PREJUDICE**, subject to the Court retaining jurisdiction to administer and enforce the Settlement Agreement; claims are released pursuant to the terms of the Settlement Agreement.

(10)  Judgment is hereby entered on the terms set forth above.  The Clerk of Court shall close the file in this matter.

**IT IS SO ORDERED.**

Dated: September 28, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge

22